# EXHIBIT B

54FXROTS

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          02 Cr. 1503(SCR)
                                           Sentence
5    DONALD ROTH,

6              Defendant.

7    ------------------------------x

8                                          White Plains, N.Y.
                                           April 15, 2005
9                                          3:10 p.m.

10
     Before:
11
                     HON. STEPHEN C. ROBINSON,
12
                                           District Judge
13

14                          APPEARANCES

15
     DAVID N. KELLEY
16        United States Attorney for the
          Southern District of New York
17   CATHY SEIBEL
          Assistant United States Attorney
18

19   LEWIS & FIORE
          Attorneys for Defendant
20   DAVID L. LEWIS

21

22

23

24

25

54FXROTS                    Sentence

1           THE DEPUTY CLERK:  Your Honor, this is the matter of

2    United States of America versus Donald Roth.

3           Starting with the government, can I have counsel state

4    their appearance for the record, please

5           MS. SEIBEL:  Good afternoon, your Honor.

6           Cathy Seibel for the government.

7           THE COURT:  Good afternoon, Ms. Seibel.

8           MR. LEWIS:  Good afternoon, your Honor.

9           I'm David Lewis.

10          THE COURT:  Good afternoon, Mr. Lewis.

11          Good afternoon, Mr. Roth.

12          Please be seated.

13          We are here to sentence Mr. Roth on Criminal

14   Indictment Superseder 7, 02 Crim. 1503.

15          First, let me ask you, Mr. Lewis.  Have you had a

16   sufficient opportunity to review the presentence report and

17   sufficient opportunity to review it with your client?

18          MR. LEWIS:  Yes, your Honor.

19          THE COURT:  Thank you.

20          Ms. Seibel, have you seen and reviewed the presentence

21   report?

22          MS. SEIBEL:  Yes, your Honor.

23          THE COURT:  Thank you.

24          I would have been stunned if either of you said you

25   hadn't, given the volume of submissions in this case, which I

54FXROTS                          Sentence

1    found quite interesting.

2            Let me just say for the record what I've reviewed in

3    preparation of sentence, and you can tell me if there is

4    something I've missed.  And we will all hope that I have not.

5            First of all, I have reviewed the aforementioned

6    presentence report.  I have reviewed the presentence memorandum

7    of law submitted on behalf of Mr. Roth by Mr. Lewis, which is a

8    128-page memorandum, with Exhibits A through Z and AA through

9    II.

10           It is generally my practice to read into the record

11   every document that I've reviewed, but I will simply leave it

12   to say in this case, given that there are so many of them, that

13   I have read every page of your submission here.

14           I've also read and reviewed your April 11th letter to

15   the Court -- that's from Mr. Lewis -- which attached some

16   letters.  A couple, I had already received, but there are

17   attached letters from Rev. Terri C. Luper of St. John's

18   Evangelical Lutheran Church, a letter from a Mr. Andrew Huber,

19   apparently undated, a letter from Patricia Thompson, also

20   undated.  I have reviewed Mr. Lewis's April 11th letter, which

21   attached letters from the defendant, Mr. Roth, dated

22   August 16th, 2004, and included his curriculum vitae, a letter

23   from a Jeanne Muskat Roth, the defendant's wife.  And I have

24   reviewed the government's sentencing memorandum submitted by

25   Ms. Seibel, which tips the scale at a mere 94 pages, and I have

54FXROTS                        Sentence

1    the April 14th, 2005, fax from Mr. Lewis in response to the

2    government's submission, which is a 29-page letter.

3            That's what I've reviewed in preparation of sentence.

4    Counsel, am I missing something?

5            MS. SEIBEL:   That looks like everything to me, Judge.

6            MR. LEWIS:   No, your Honor, you're not.

7            THE COURT:   Okay.   Well, let me tell you how I intend

8    to proceed here, and then we can move forward.

9            As it could well be imagined, in Mr. Lewis's 128-page

10   memorandum, he raises many questions.   And instead of going

11   through them one by one, which would literally take us hours, I

12   will recognize the issues that were raised and tell you how I

13   have ruled on them, having read the submissions of counsel for

14   the defendant and the government.   I will attach all of the

15   documents that I have reviewed as part of the record, so

16   counsel can feel assured that any issues raised or arguments

17   mentioned in these memoranda or letters will be a part of this

18   record.   But let me walk through the issues, and then we will

19   talk about any that I have missed.

20           First, I should talk, I guess, briefly about Booker

21   and Crosby and how I view how they relate to the sentencing

22   guidelines and this case.

23           It is my view that after Booker, or what Booker

24   teaches us is that there is no Sixth Amendment violation where

25   the guidelines are advisory and not mandatory.   Therefore, the

54FXROTS                        Sentence

1   Court may consider enhancing factors which were not admitted by

2   the defendant or found by the jury, and the Court may consider

3   them in finding what is the appropriate guideline range,

4   recognizing that the guideline is not mandatory.  The Court

5   does not have to issue a sentence within the guideline range,

6   only one that is reasonable.

7        Booker further makes it clear that the Court, the

8   sentencing Court, should consider the guidelines in formulating

9   a reasonable sentence.  And I will state for the record that I

10  do.  I take them very seriously.

11       In Crosby, the Second Circuit found that there was no

12  duty to apply the guidelines; that is, apply them on a

13  mandatory basis after Booker, but that there is a duty to

14  consider them in fashioning a sentence.  That Court does not

15  make it clear what weight ought to be given to the guidelines,

16  whether there should be heavy weight given to the guidelines,

17  moderate weight, light weight.  But they make it clear in

18  Crosby that it would be error for a sentencing judge to limit

19  consideration to the applicable guideline facts found by a jury

20  or admitted by the defendant.  Instead, the circuit makes it

21  clear that the Court must find an applicable guideline range,

22  including enhancements, based on facts found by a court to a

23  preponderance or by a preponderance of the evidence.

24       Okay.  So that's the framework I'm operating in.  To

25  the extent anyone disagrees with that, it is noted in your

54FXROTS                          Sentence

1   papers, and you've got that exception.

2           All right.  So let me go through some of what is going

3   on here.  With respect to the presentence report, the defendant

4   objects, in one way or another, to Paragraphs 9, 10, 11, 12,

5   13, 14, 15, 16, 18, 19, 20, 21, the footnote on Page 23, 25,

6   35, 48, 67, 69, 70 and 76.

7           What I have done is gone through, in light of those

8   objections and the government's response, and made certain

9   changes to the presentence report, which I will go through

10  right now.  To the extent that there were objections raised to

11  a paragraph and I say nothing about it, that means I have

12  rejected the objection and left the presentence report as

13  standing.

14          Okay.  The first change that I make in the presentence

15  report is to Paragraph Number 15, which is to strike in its

16  entirety.

17          With respect to the paragraph numbered 16, I add

18  language on the very first line.  At the end of the first line,

19  after the word "relationship," I wrote in "as lawyer and

20  investigator."  So that sentence will read, that first sentence

21  will read, "Prior to Raymond Bryant's arrest, Roth and St. John

22  had a pre-existing relationship as lawyer and investigator with

23  the Bryant family."  At the end of that paragraph, I add the

24  following sentence:  "Roth also represented Raymond Bryant on

25  state assault charges, Malcolm Bryant on state drug charges,

54FXROTS                          Sentence

1    and Timothy Cherry on state drug charges.

2              Paragraph Number 19, I strike it in its entirety.

3              Paragraph Number 25, I strike it in its entirety.

4              Paragraph Number 48, I change that first sentence to

5    read, "Roth describes a normal development."  The report says

6    "an eventful development."  I took out the word "eventful" and

7    said "normal" and said, "Roth describes a normal development."

8              I will allow you, Mr. Lewis, at this point, since this

9    was not specific wording that you requested, if you think that

10   wording is improper or inappropriate, to let me know.

11             MR. LEWIS:  No, I think it's better than I suggested.

12             THE COURT:  Okay.  I think there is one more.  Yes.

13   On Paragraph Number 67, I strike out "7-Eleven attorney" in the

14   first sentence, and the second sentence in its entirety.  So

15   Paragraph Number 67 will now read, "Roth advises that from June

16   1997 through October 1998, he was a full-time volunteer with

17   First Defense Legal Aid, Chicago, Illinois."  I struck the

18   sentence, "We note that the defendant did not earn his juris

19   doctor degree until February 1998."  That is stricken.

20             Okay.  I note that the defendant objected to any and

21   all characterizations of the affidavits as "false and

22   detailed," two separate words, not as one phrase.  And I will

23   say for the record I left those in, because I found those

24   characterizations are accurate and true.

25             The defendant objected to the cross-reference in the

54FXROTS                              Sentence

1     guidelines under the Sentencing Guideline Section 2J1.2(c).   I

2     find that the cross-reference is mandatory.   I find that even

3     if it's not mandatory, I believe it applies in this case.   And

4     I believe that the cross-reference is still applicable, even

5     after Blakely, when you consider Booker, as I've stated before;

6     that is, that the guidelines are not mandatory, but are

7     advisory.

8          So my calculation is that Mr. Roth has a total offense

9     level of 34 -- I'll tell you about the two points I add for

10    obstruction in a moment -- and a Criminal History Category of

11    I, with a proposed guideline range of 151 to 188 months.   In

12    this case, there is a statutory maximum of 60 months.

13          Let me talk about the upward departures.

14          The defendant objected to the four-level upward

15    departure for role in the offense and the characterization of

16    Mr. Roth.

17          MR. LEWIS:   Excuse me, your Honor.   They're

18    adjustments.

19          THE COURT:   Adjustments.   I'm sorry.   Not upward

20    departure, but adjustments to the guideline range -- thank

21    you -- for role in the offense.   I will state my findings about

22    this very briefly.

23          The defendant was an organizer and leader, because he

24    was a decision-maker and directed what was found to be illegal

25    activity of others, namely, that of Mr. St. John.   The

54FXROTS                        Sentence

1   defendant hired Mr. St. John.  He directed Mr. St. John's

2   activities.  He directed the criminal aspects of the defense of

3   Malcolm Bryant and Mr. Tim Cherry.  He encouraged Mr. Melvin to

4   sign a false affidavit.  He directed affidavits of Yolanda

5   Delgado and Raymond Bryant.  I think that though the

6   enhancement requires that there were five or more people

7   involved, first, the direction of one of the persons, I

8   believe, is sufficient.  But in any event, the others that I

9   believe would make up that five include Mr. St. John,

10  Mr. Malcolm Bryant, Mr. Tim Cherry, Mr. Raymond Bryant and

11  Ms. Yolanda Delgado.  So I find that that four-level

12  enhancement is appropriate.

13          I find that the two-level enhancement for use of a

14  minor --

15          MS. SEIBEL:  Your Honor, I'm sorry to interrupt.  I

16  think you misspoke in discussing leadership adjustment.  You

17  said that Mr. Roth directed the cases of Tim Cherry and Malcolm

18  Bryant.  I think you meant Raymond Bryant and Tim Cherry.  And

19  then you said Yolanda Delgado and Raymond Bryant, and I think

20  you meant to say Yolanda Delgado and Malcolm Bryant.

21          THE COURT:  Okay.  Let's get that right.  Let me go

22  back.  Right.

23          The Court believes that Mr. Roth directed the criminal

24  aspects of the defense of Raymond Bryant and Mr. Cherry, and

25  directed the activities of Yolanda Delgado and Malcolm Bryant.

54FXROTS                    Sentence

1          Thank you.

2          With respect to the two-level enhancement for use of a

3    minor, the minor alleged was Malcolm Bryant, who was 17 at the

4    time of the relevant events in this case.  And I find that both

5    Mr. Roth and Mr. St. John spoke to Malcolm Bryant, who was 17

6    at the time, and elicited his help in what the jury found to be

7    an illegal scheme.  Roth had both direct contact with Malcolm

8    Bryant and indirect contact with him through Mr. St. John and

9    others.  And in my view, this activity clearly falls under

10   Section 3B1.4, and warrants a two-level enhancement.

11         With respect to the enhancement or adjustment of the

12   two-level enhancement, it is my view that after Booker and

13   Crosby, it is clear that the Court can and should make a

14   finding re: enhancements based on obstruction of justice, even

15   if the jury did not make such a finding.  And I find that the

16   defendant has clearly lied in his testimony under oath.

17         Additionally, the jury, by the fact of their verdict,

18   in my view, necessarily had to find that Mr. Roth lied on the

19   witness stand, by rendering the guilty verdict that they did,

20   among other things outlined in the government's submissions on

21   Pages 29 through 36.

22         I will just mention in particular that I believe

23   Mr. Roth lied about his state of mind during the course of his

24   activities.  I believe he lied about having agreed to obstruct

25   justice, about having agreed to obtain false affidavits from

54FXROTS                    Sentence

1   Mr. Cherry, about the conversations he had with Mr. Bryant

2   regarding Mr. Bryant's innocence.  I believe he lied in his

3   testimony about conversations he had with Mr. Bryant about Flip

4   Melvin being a confidential informant.  I believe he lied when

5   he said that he had never discussed the false affidavits.  And

6   I believe he lied in his testimony about his discussions with

7   Mr. St. John.

8              Any one of those would be significant and material and

9   warrant an obstruction enhancement, and I find clearly all of

10  them together warrant such an enhancement.

11             So that's how I got from a 26 to a 34, finding that

12  the cross-reference applied on a base of 26, applied the

13  two-level enhancement for the use of a minor, four-level

14  enhancement for the role in the offense and the two-level

15  enhancement for obstruction, which brought me to a Level 34,

16  Category I.

17             As I said, the statutory maximum in this case is 60

18  months.  But I do believe it is important for the Court to at

19  least lay out what it believes the appropriate guideline,

20  Criminal History Category, offense level and range ought to be.

21             Ms. Seibel.

22             MS. SEIBEL:  Sorry to interrupt again, your Honor.

23             Although I think it's implicit and maybe even explicit

24  in what your Honor already said, I would ask the Court to make

25  a finding in connection with the obstruction of justice that

54FXROTS                    Sentence

1    you find the defendant consciously acted with the purpose of

2    obstructing justice, and that the false statements were not by

3    mistake or accident, et cetera.

4         THE COURT:  I do find and believe that the defendant

5    lied in his testimony, with the intent to obstruct justice;

6    that these were not merely mistakes, inadvertent, but that they

7    were conscious and clear and planned.  And so if it wasn't

8    explicitly clear, I want to make it clear that I believe this

9    defendant knowingly and intentionally obstructed justice.

10        Yes, I meant to, but didn't, mention in here his

11   conversations with his attorney friend who testified, whose

12   name escapes me for a moment.

13        MS. SEIBEL:  Frank Wallace.

14        THE COURT:  Mr. Wallace.  Where it became clear, if it

15   had not been clear up to that point, it became completely clear

16   that Mr. Roth was touting his ability to get witnesses to

17   change their story, even before having spoken to that witness.

18   And I found that particularly compelling, but certainly not the

19   only compelling factor that made it clear to me that in many

20   respects, Mr. Roth's testimony was not truthful, and

21   intentionally so.

22        All right.  So that's where we start.  Let me just be

23   clear for the record.  I do not intend to go back over each of

24   the arguments made in the 129-page submission with the 30 or so

25   exhibits, or the government's 92-page submission; though, if

54FXROTS                    Sentence

1   there is some issue that has not been raised in these tomes

2   before; obviously, counsel should raise them now, so that the

3   Court can consider them.  But I do not intend to go over any of

4   the arguments raised.  But, for instance, if there was an

5   objection to a paragraph of the presentence report that I did

6   not list by number, please advise me of that now.

7         Mr. Lewis.

8         MR. LEWIS:  I'm sorry.  Your Honor said that -- I'm

9   sorry.

10        THE COURT:  What I'm just asking is, I listed -- I

11  don't know; I'm just guessing -- 30 paragraphs.

12        MR. LEWIS:  You did not miss an objection.

13        THE COURT:  All right.  Thank you.

14        Well, in this, as in all criminal sentencings, the

15  defendant has an absolute right to be heard.

16        MR. LEWIS:  Your Honor, would you just entertain one

17  brief sentence about the "cross-reference" issue?

18        THE COURT:  Sure.

19        MR. LEWIS:  The government's contention, and what it

20  appears the Court has adopted, is that after Booker, the issue

21  of the cross-reference falls out, because the guidelines are

22  not mandatory.  And this is the only point I want to make.

23  Because the cross-reference so jacks up the offense multiple,

24  is a multiple, even though there is a rounding down, by virtue

25  of the conviction, the fact that the cross-reference

54FXROTS                    Sentence

1    application occasioned such a large guideline sentence, we

2    believe it still violates the rule of Apprendi.

3          While Booker gives a remedy for the problem raised by

4    Blakely, the Apprendi problem -- and that is the consequence of

5    the cross-reference and the lack of a jury verdict under the

6    Sixth Amendment as regards that cross-reference, because it

7    relates to the acts of Cherry and Bryant -- still, we believe,

8    still offends the Sixth Amendment and still creates the

9    Apprendi problem.

10          THE COURT:  Let me ask you, Mr. Lewis, on a slightly

11   related problem.  Assume for a moment you're right about that.

12   What is the offense level, then, that we're starting with under

13   your assessment?

14          MR. LEWIS:  Twelve.

15          THE COURT:  Starting with a 12.

16          MR. LEWIS:  And because of the obstruction, even if

17   you start with 14, that would be the base offense level.

18          And the other view of it is that the obstruction

19   consequences, as the cross-reference makes it, is not tied to

20   any act of Congress or any other decision, except that the

21   Sentencing Commission made that decision.  And that's where the

22   Apprendi question comes in.

23          THE COURT:  I understand your argument.  I disagree.

24   You stated that in your papers.  And I assume you're going to

25   appeal this sentence, and the Second Circuit will have a chance

54FXROTS                        Sentence

1    to grapple with it.

2            Having said that, is there any other issue that you

3    need to raise at this time?

4            MR. LEWIS:  No.

5            THE COURT:  Thank you.  All right.  Well, the

6    defendant has an absolute right to be heard at sentence.

7            And I'll start with you, Mr. Lewis.  If there are any

8    statements you wish to make, present any information to the

9    Court in mitigation of sentence, please do.

10           MR. LEWIS:  Your Honor, what I'd like to do is talk to

11   the Court a bit about the post-Booker atmosphere and the

12   decision that the Court has to make, the guidelines being a

13   component, and Crosby not directing us, in terms of what the

14   weight should be.

15           We've asked in our papers for a sentence that is not a

16   sentence of incarceration, and we've asked for that, because we

17   believe that the goals of the system, as set out by the

18   statute, would be fulfilled by a sentence that doesn't include

19   incarceration.

20           The guidelines are -- in weighing the guidelines and

21   in weighing the post-Booker world about those guidelines, I

22   understand that we're not returning to the pre-guideline world,

23   and I know that there are very few of us who are left who

24   remember actually sentencing under the pre-guideline --

25           THE COURT:  More than a few of us, because I was an

54FXROTS                          Sentence

1    Assistant in that world, and so was Ms. Seibel, who sits next
2    to you.
3             I hate to divulge your age, but it's the truth.
4             MR. LEWIS:  I was going to say that perhaps the three
5    of us may be the only ones who do remember that.
6             The reasons that the Court should, I believe, consider
7    the possibility of probation are the nature and circumstances
8    and the history and characteristics of the defendant.  We've
9    laid out -- and I'm not going to repeat for you the letters --
10   we've laid out Mr. Roth's attempt to try and make something of
11   his life after this conviction.  The people whom he's helped,
12   the people who he's cared about, the church, as well as his
13   family, have come today to court to stand behind him through
14   its representatives.  What we're talking about, also, is
15   whether or not we can punish Mr. Roth in the sentence, but
16   still obtain from him some work of real value, something that
17   doesn't waste the time and the energy and the talent and the
18   government's money by sentencing him to jail.
19            He has taken steps to respond to the conviction, that
20   is, not saying that he has said, "I have done it," but rather,
21   by his conduct, he has indicated that he wishes to demonstrate
22   that he has an opportunity and a role to play outside of prison
23   and in the society that he lives in, and that he has an
24   opportunity to make a contribution.
25            This is in the nature of a different observation, but

54FXROTS                    Sentence

1   it is something that might be worthy of the Court's

2   consideration.  As a defense lawyer, very often, when we stand

3   here to talk about the result or the consequence of acts, those

4   of us who believe in method defense lawyering try to put

5   ourselves in the position of the defendants when we speak for

6   them.  This case, in some ways, cuts extremely close.  While I

7   understand the verdict and the findings your Honor has made on

8   the enhancements, the lines between what defense lawyers do and

9   cannot do, as dictated, in part, by the law, as determined by a

10  jury after a grand jury, obtained, in part, in effect, by our

11  adversaries, puts the government in the position of being more

12  of an impact-statement-maker than necessarily the neutral and

13  detached advocates they are in so many cases.

14          Here, this man, in an attempt to defend these people,

15  reached out and tried to do something that the government and

16  the jury has found to be criminal.  The ABA guidelines tell us

17  that we have a duty to investigate.  The "ineffective

18  assistance" cases like Strictland tell us that our duty to

19  investigate becomes less when the client tells us more, but the

20  duty remains.  We also have an opportunity and an obligation

21  sometimes to continue to investigate, even when our client has

22  told us that he has done it, principally because the test is

23  not whether the defendant has done the act, but whether the

24  government can prove it, which is what the system is about.  So

25  the need to inquire and the need to press sometimes pushes

54FXROTS                          Sentence

1    lawyers, and not necessarily unreasonably, to be able to

2    develop tactics that actually test whether the government's

3    witnesses are telling the truth outside the forum of the

4    courtroom, in order to collect material that can be used for

5    cross-examination.

6           So on one level, if Flip Melvin decided, for example,

7    that he would sign that affidavit, there is proof that he would

8    basically do whatever anybody asked him to do.

9           Now, I'm not telling you that's the case in this case.

10   I'm telling you about how close the line is and how close one

11   act may be under that "safe harbor" provision of Title 18,

12   15(c), and another act would be over the line.  But the line is

13   a difficult thing sometimes.  And the ethics of one side, such

14   as the criminal lawyer's ethics, and the ethics as are found by

15   our adversary that goes the other way in other cases are

16   different.  It's enough to make professors have long-term

17   employment and tenure at law schools all over the country.

18          What I'm trying to talk about is that the line of

19   criminality is so waving in so many ways that it becomes a

20   dangerous precedent for the practice of law for the defendant.

21   This conviction, the Court understands, is going to be tested

22   on appeal.  But most importantly, in terms of looking at this

23   defendant, his nature and his circumstances, whether it's his

24   mother's description of his competitiveness or his own zeal to

25   represent his clients, which led him into the position he is

54FXROTS                    Sentence

1    today.  That's a different type of criminality than usually

2    you're seeing here.  It's a different type of action.  And if

3    Mr. Roth's action has been for defendants charged with

4    different crimes, that cross-reference would have driven down

5    these numbers, rather than raise them.

6           The bottom line, I think, is that in trying to figure

7    out who he is, because Booker directs the Court to make that

8    assessment, too, who he is is more than this conviction, and

9    more than the Cherry and Bryant cases, and more than the

10   slippage over the line from a series of tactics that may be

11   considered legal, to a series of tactics that have at least

12   been found by a jury to be illegal, and in trying to figure out

13   how to sentence him, considering all the variables, which

14   include retribution and individual deterrence, and collective

15   deterrence, the question is:  What is best, not just for

16   Mr. Roth, but for the system in which we live?

17          I submit to you that a jail sentence would not be the

18   most effective message.  If there is to be value in his work

19   and who he is, and the value, in terms of what he's done in his

20   life that he has earned in some cases, the consideration is

21   that he should be allowed to continue that work, and that the

22   Court impose upon him a series of conditions that don't include

23   jail, but rather put him in the position of making a direct

24   contribution to the community, and pay back the system in a way

25   that the system could have some use for it.  That's our

54FXROTS                          Sentence

1    application.

2              It is a little unusual to actually make that

3    application, but since Booker has opened the door for the first

4    time in quite sometime, it's a matter of whether, A, the

5    lawyers have, in some ways, the courage to make them for their

6    clients; and whether they have a client who deserves it.  It's

7    a rare opportunity to have both.  It doesn't take much courage

8    to make the application, because the line between courage and

9    foolhardiness is sometimes for us very thin, as well.  But

10   Donald Roth's entire life and everything he's done before and

11   after this are enough to secure the Court's interest, I

12   believe, and enough to justify a sentence that doesn't include

13   incarceration.

14             In asking for that, I understand I swim against the

15   tide, but there are tides and defendants that really do merit

16   something other than jail, and instead test the creativity of

17   the process in making sure it gets what it deserves, without

18   describing either the defendant or some of the values that the

19   defendant has successfully represented over his lifetime.

20             Thank you.

21             THE COURT:  Mr. Roth, if you wish to make a statement

22   or present any information in mitigation of sentence, now is

23   the time.

24             THE DEFENDANT:  I don't, your Honor.

25             THE COURT:  All right.  Ms. Seibel, any statement the

54FXROTS                        Sentence

1    government wishes to make?

2            MS. SEIBEL:   Just two quick things briefly, your

3    Honor.

4            First of all, I keep reading about, and today heard

5    Mr. Lewis refer to, the idea that what was going on in

6    connection with Flip in this case is that the defense was

7    trying to get him to falsely exculpate Mr. Roth's clients, so

8    that later, he could be cross-examined, the idea being that if

9    Flip signed an affidavit falsely saying Tim Cherry is not a

10   drug dealer, falsely saying Ray Bryant is not a drug dealer,

11   this is something that Mr. Roth would have used at trial to

12   show that Flip is a liar.

13           And that is absurd, because, obviously, Mr. Roth is

14   not going to stand up at trial and say to the jury:   "Don't

15   believe Flip.  He's a liar.  He's willing to falsely state that

16   Tim Cherry is not a drug dealer, when we all know Tim Cherry

17   is."  It's absurd.  No defense lawyer is going to defend his

18   client accused of drug dealing by saying that "The informant

19   falsely claimed my client wasn't a drug dealer."  That's why I

20   assume Mr. Roth never testified or came close to testifying to

21   what Mr. Lewis is now suggesting, that this was just an

22   exercise in testing the credibility of the informant.

23           And the only other thing I wanted to add, I think your

24   Honor got more than enough of a taste, in the government's

25   papers, as to how seriously the government takes this.  And I

1    like to think it's not simply because prosecutors and defense

2    lawyers are adversaries.  In fact, I sincerely believe it has

3    nothing to do with it.  The laws that this defendant violated

4    protect criminal defendants.  They protect everybody who sets

5    forth in the courtroom.

6          The notion that you shouldn't obstruct justice isn't

7    something that offends me as a prosecutor.  It offends me as a

8    citizen.  Anybody who comes into a courtroom and -- honestly,

9    if the situation were reversed, and your Honor was about to

10   sentence a prosecutor who tried to get a witness to lie, nobody

11   would be having any discussions about fuzzy lines or, you know,

12   over zealousness.  That's not what this case is about.  It's

13   plain and simple.  It's false evidence, not a blurry area.

14   It's not something that a defense lawyer, in good faith, could

15   think was okay.

16          And in terms of sending the most effective message, to

17   use Mr. Lewis's words, a sentence of probation would send about

18   the worst message imaginable.  It would send the message that

19   you can knowingly use false testimony, and all that's going to

20   happen to you is, you're going to lose your ticket to practice

21   law.

22          The government recognizes that your Honor doesn't have

23   to apply the guidelines, and your Honor ought to consider

24   3553(a).  We ask your Honor to do that.  But included in

25   3553(a) is the need for the sentence to reflect the seriousness

54FXROTS                           Sentence

1    of the offense, to promote respect for the law, and to provide

2    just punishment, to protect the public and to afford adequate

3    deterrence.

4              And for all of those reasons, a sentence of probation

5    would be, in the government's view, widely inappropriate,

6    particularly in light of the fact that my impression, from all

7    the papers I've looked at, is that we're talking about a

8    defendant who doesn't think he did anything wrong, and, given

9    the opportunity, would do this again.

10             THE COURT:  Well, that may not be fully fair.  The

11   defendant is appealing his conviction, and is not in a position

12   at this point to say, "What I did was wrong," because that

13   would be, in effect, saying to the appeals court, "The jury got

14   it right."

15             MS. SEIBEL:  I don't suggest that.  I'm sorry to

16   interrupt, Judge.

17             THE COURT:  Everybody likes to interrupt me today.

18             What is that, Mr. Skolnik?

19             THE DEPUTY CLERK:  It's tax day.

20             THE COURT:  Oh, right.

21             MS. SEIBEL:  I don't suggest that the defendant should

22   come in and say:  "You're right.  I did it."  I also don't

23   expect a defendant in these circumstances to come in and tell

24   the judge that "My role as a criminal defense lawyer excuses

25   what the jury found I did."  I don't expect the defendant to

54FXROTS                        Sentence

1    come in and say, "These laws exist to protect prosecutions."   I

2    don't expect the defendant to come in and say, "You can't

3    really know what the truth is."   And all those ideas were

4    floating through the defense papers:   "Since you can't know

5    what the truth is, you know, what I did was okay."

6            So the point I want to make, simply, is that the

7    defense is asking you to disregard the guidelines and give an

8    extremely lenient sentence.   And I don't see any basis in this

9    case, particularly given that I don't see in any defense

10   submissions a recognition of the seriousness of the offense.

11   Even a defendant who is claiming he didn't do it can recognize

12   that someone who did do that would have done something very

13   serious.   And my impression, from the defense papers, is that

14   litigating is a game, and we're all out to move our chess

15   pieces how we want.   And that's not how it works.

16           THE COURT:   I hear you, Ms. Seibel.   And on that

17   point, I do disagree.   I think, I hope, I think counsel would

18   say that if one did, in fact, obstruct justice intentionally

19   and knowingly in the way that this defendant stands convicted

20   of having done, that that's a very serious thing.   I think that

21   what they would say is, one -- and I'm not putting any words in

22   their mouth, but one, "I didn't do that," still.   Okay?   That's

23   fair.

24           And two, I think what I took out of both Mr. Lewis's

25   comments and the submission was that there comes a point when

54FXROTS                        Sentence

1   an attorney decides to act zealously on the part of their

2   client.  And the question then becomes:  Where is that line?

3   Clearly, there is a line.  There are the criminal statutes that

4   say there is a line.  But where is that line?  What is the

5   conduct that the defendant engages in that makes -- that a

6   lawyer could engage in that would take him across that line,

7   and did that happen here?

8            I've stated clearly my view already.  I think Mr. Roth

9   was not truthful, lied on the stand during the course of his

10  testimony.  So obviously, I have a view of his knowledge of

11  that lying, and where he went.  But I'm not sure it's fair to

12  say that he would think there is no line.  I think it may be

13  that maybe reasonably, and rightfully so -- and the Second

14  Circuit will give us some more guidance in that respect -- he

15  thought he didn't cross that line.  The jury thought

16  differently.

17           I saw you itching to get up, Mr. Lewis, and I'll allow

18  you to respond.

19           MR. LEWIS:  Just briefly.

20           It's not a game.  We take it seriously, and we said so

21  in our papers.  The Court clearly understood our argument.

22           In terms of whether the Flip Melvin affidavit could be

23  used at trial, as a defense lawyer, it could certainly be shown

24  that the man will sign anything; not that it's true, but that

25  he's willing to do it.  So there is a tactic that's tied to

1  that.  And the reason for that discussion is to show how that

2  line can be perceived in a number of ways, and the Court

3  understood that.

4          With regard to the government's position that only a

5  jail sentence will satisfy the terms and conditions of the

6  statute, probation has long been seen as a means to vindicate

7  the authority of the law.  It has been -- before the

8  guidelines, it was seen as that.  That has not changed.

9  Probation is available under departure grounds.  And within

10  that zone, that limited zone, and it apparently is an effective

11  means of not only vindicating the authority, but effectively

12  protecting the public from further violations, fulfilling the

13  terms of the statute.

14          A lawyer who loses his livelihood -- the government

15  says the only thing he loses is his license -- he loses what

16  he's worked his entire lifetime for, and most likely loses

17  something he's identified by and with.  It's a loss of position

18  in the community.  It's a loss of position to one's self.  And

19  to lose one's livelihood by virtue of one's actions is also a

20  punishment.

21          But what is significant, I think, in the desire to

22  have a sentence of probation and the message that it sends is

23  not that he has done nothing wrong and has gotten off

24  scot-free.  That's not what we're asking for.  That's not what

25  it means.  And it's not a public perception, as if it's a

54FXROTS                          Sentence

1   tabloid determination that there is a sentence, and it's Club

2   Med, or any of that.  But the reality of providing him with a

3   sentence that causes him to continue to contribute to the

4   community, that causes him to do certain things, because he's

5   been ordered to by the Court, and to make it clear in the

6   sentence, as well as in whatever publicity the government

7   generates by their press release after the sentence, it is a

8   sentence that is a criminal sentence and carries with it the

9   opprobrium of being a convicted felon.  And that, too, is a

10  weight that one carries in this society.

11          For too long, we have seen the only answer is jail.

12  And the only response the system has been able to come up with

13  is incarceration.  We have now a day where that may not be

14  necessary, and when that's not necessary.  It engages us in

15  determining for the first time something not mechanical and not

16  lock-step, but engages us in the opportunity to formulate a

17  sentence that enables the individual to come and re-integrate

18  in that community quickly and sufficiently, so that he can make

19  a contribution.

20          The guidelines prevented much of that for defendants

21  like Donald Roth.  The guidelines also were designed to make

22  white-collar defendants serve greater amounts of time, as a

23  policy of the Commission.  So some of the things -- and I don't

24  want to belabor it, but I laid them out quoting from Judge

25  Gertner's opinion what's wrong with the guidelines.  But the

54FXROTS                    Sentence

1    reason I'm telling you that is that the guidelines were the

2    things that drove us away from probation in white-collar cases,

3    drove us away from the use of that tool as a technique for

4    determining a punishment.  And now that we are not driven that

5    way by a mandatory system, we need to return to the opportunity

6    to look at those other options and other ideas.  Even before

7    the guidelines were struck down, there was some discussion in

8    the Second Circuit, where there were departures about if there

9    was a sufficient reason for departure, what sentence should be

10   formulated that could give back to the community and respond to

11   the other 3553(a) considerations.

12          So we're not asking for a pass.  We're not saying to

13   the rest of the world, "If he gets probation, he got away with

14   it."  We're saying that the man, stripped of his livelihood and

15   stripped of his identity in the community and branded as a

16   felon, should now also continue to contribute back to that

17   community, not for his exclusive benefit, and not to lay fallow

18   for a period of time in a jail cell.  That's what the request

19   for probation is.

20          THE COURT:  Well, thank you.

21          I will describe the sentence that I intend to impose,

22   and the attorneys will have a final opportunity to make any

23   legal objections before the sentence is finally imposed.

24          I will state that I do look at 3553(a) and its

25   requirement that I take into account both the nature and

54FXROTS                          Sentence

1     circumstances of the offense, the history and characteristics

2     of this defendant, and try to make or fashion a sentence that

3     reflects the seriousness of the offense, and is one that

4     promotes respect for the law, provides just and adequate

5     punishment and affords an adequate deterrence, both for

6     criminal conduct of this defendant in the future, and others.

7              Having said that, I will say that, in my view, the

8     crime that this defendant has been convicted of is a

9     particularly damaging one.  And it is a damaging one, because,

10    in contrast to most other offenses that we see, they don't

11    really speak to a direct impact on the criminal justice system.

12    They are horrible offenses often, but this offense is

13    particularly troubling to me, because it goes to the integrity

14    of the criminal justice system and what those participants in

15    it, both participants in it as defendants, as actors and then

16    all of us as general citizens, what they will make of the

17    system.  And when you have a participant in that system who

18    stands convicted of subverting the system, it is a particularly

19    egregious thing.

20             And so a sentence that doesn't include incarceration,

21    to me, would be an astounding thing in this case, and it would

22    be astounding, because it would cause people to look up and

23    say, "Why didn't he get a sentence?"  And the answer would be,

24    "Well, he didn't get a sentence, because he's a lawyer and he's

25    a player in the system, so he could do" -- what I view -- "the

54FXROTS                         Sentence

1   most egregious thing in the system" -- that is, subvert it --

2   "and nothing will happen, in terms of incarceration."  So for

3   me, that's off the table.

4           I do and I did read the letters with interest, and I

5   do take into account that Mr. Roth has provided some

6   significant services to his church and to the community, and

7   that those services have been revved up after the date of his

8   conviction.  And that's fine, and that's a good thing.

9   However, it does not move me away from a view of this matter

10  and its particular seriousness.

11          The last thing I will say -- and I generally try not

12  to lecture too long at sentences, because I don't think it

13  matters to anyone, other than me -- I do believe that Mr. Roth

14  lied on the witness stand about many material, significant

15  matters in this case.  And that, to me, was a further rebuke of

16  the system.  And many people do it.  And I always take that

17  seriously.  I particularly take it seriously in the case of

18  Mr. Roth, who is an intelligent person, and was a lawyer, is a

19  lawyer.

20          I will also say, to be fair to Mr. Roth, that I have

21  always viewed this matter as one where it was a slippery slope.

22  I do not believe that Mr. Roth decided the day that he became a

23  lawyer that he would do anything to help his clients win, and I

24  do not believe that he entered the practice of law with the

25  intention of soliciting false documentation from witnesses.  I

54FXROTS                    Sentence

1   don't believe that.  I do believe that it is a path that he, as

2   many defense attorneys, wandered down, and Mr. Roth kept

3   wandering down the path until he clearly walked past the line.

4   I hope, I think, that most defense lawyers don't pass that line

5   in quite that way.

6        I actually believe, in this case, that the evidence

7   was clear that with the knowledge that the information that was

8   solicited from some of these witnesses was false, Mr. Roth,

9   with and through Mr. St. John, nonetheless, pressured those

10  individuals to sign affidavits that were false, in order to

11  help his clients.

12       I think the evidence in the case was that he not only

13  bragged about the fact that he could get witnesses to recant

14  their testimony after he had done it in one of the most telling

15  portions of the trial for me, he actually bragged that he would

16  get it to happen before it was done.  And that was why the

17  testimony of the lawyer who Mr. Roth was talking to, if I

18  remember it correctly, in order to talk to him about

19  representing a co-defendant in a case, said to that person,

20  that he, in fact, would get the witness to recant.

21       And so I think that his practice evolved into a place

22  where that behavior was practiced knowingly and anticipated.

23  And I find that troubling.

24       I set out as my guideline calculation -- and

25  interestingly enough, I argued with the government a sentence

54FXROTS                    Sentence

1  ago about being in a place where, through miscalculations, the

2  guideline range was drastically higher than they anticipated.

3  In this case, it is also, at least anticipated, in the sense of

4  the way that they charged the case.  Because had they charged

5  this case in a different way, as I've stated before, I believe

6  the appropriate guideline range was 151 to 188 months.  But

7  because of the way they charged it, they're left with the

8  statutory cap of 60 months.

9          And that's going to be my sentence, the term of

10  incarceration of 60 months, three years of supervised release.

11  I am going to impose a fine of $10,000, and a special

12  assessment of $100.

13          With respect to the term of supervised release, the

14  defendant shall not commit another federal, state or local

15  crime; the defendant shall not possess a controlled substance;

16  the defendant shall not possess a firearm or destructive

17  device.

18          And the mandatory drug testing provision is suspended,

19  based on the Court's determination that the defendant poses a

20  low risk of future substance abuse.

21          The standard conditions of supervision are ordered,

22  with the following special conditions:

23          The defendant shall provide the Probation Officer with

24  access to any requested financial information.

25          The defendant shall not incur any new credit card

54FXROTS                              Sentence

1   charges or open additional lines of credit without the approval

2   of the Probation Officer, unless the defendant is in compliance

3   with the installment payment schedule.

4            The defendant is to report to the nearest Probation

5   Office within 72 hours of his release from custody.

6            And it is recommended that the defendant be supervised

7   in his district of residence.

8            It is recommended that the defendant pay a fine of

9   $10,000 within 30 days after sentencing or release from

10  confinement.  In the event that he doesn't pay the fine in full

11  within the time period listed that I just stated, he is to pay

12  it in monthly installments of at least 15 percent of his gross

13  monthly wages during the period of his supervised release.

14           I will hear argument from counsel about whether or not

15  the defendant should be granted bail pending appeal.

16           Let me ask you, Ms. Seibel.  We'll start with you.  Do

17  you object to this defendant being given bail pending appeal?

18           MS. SEIBEL:  Your Honor, we don't believe he meets the

19  statutory criteria.  But beyond what we've said in our papers,

20  I don't have anything to add.

21           THE COURT:  Mr. Lewis?

22           MR. LEWIS:  Your Honor, we believe that he meets the

23  criteria that there is a substantial issue.  We laid out in the

24  papers what those positions are.  And in our response, we

25  believe that the issue of the "other crimes" evidence and its

1     admission alone would be a substantial issue.  And we ask that

2     he be granted bail pending appeal.

3                 THE COURT:  There is a substantial issue, and anything

4     else?

5                 MR. LEWIS:  That it would cause a reversal and

6     modification, but since it's a single count, anything that

7     impacts on the single count of conviction would be, by itself,

8     cause for reversal.

9                 THE COURT:  Ms. Seibel?

10                MS. SEIBEL:  I don't think it's that simple.  I think

11    there are errors that, which, of course, I don't concede there

12    were, but I think there are errors which the Second Circuit can

13    find are errors, but that they were harmless or not germane.

14    And so I don't think an error that's substantial, by

15    definition, will result in a reversal.

16                MR. LEWIS:  With all respect, I think the case law

17    goes to the contrary.  The Randall case talks about a

18    substantial issue that affects the outcome.

19                THE COURT:  My question is this:  Do I have to find,

20    Mr. Lewis and Ms. Seibel, do I have to find that the defendant

21    is likely to succeed on the issue raised, or simply that there

22    is an issue being raised?

23                MS. SEIBEL:  I think we're in agreement that you don't

24    have to find that you expect to be reversed.

25                THE COURT:  Okay.  Then I'm going to grant bail

54FXROTS                         Sentence

1    pending appeal.

2              The current bail conditions shall remain in effect.

3              Should the Probation Office determine at any point

4    that any additional conditions are necessary, they obviously

5    are free to make application to the Court, and I will consider

6    it.

7              Anything else at this time?

8              MR. LEWIS:  No, your Honor.

9              THE COURT:  All right.  Well, I will impose the

10   sentence as stated, and it is so ordered.

11             And let me advise you, Mr. Roth, you can appeal your

12   conviction, which it is clear you will do, if you believe that

13   your guilty verdict was unlawful in some way, or subject to

14   error by the Court.  You may also have a statutory right to

15   appeal this sentence under certain circumstances, like if you

16   think that the sentence is contrary to law.

17             With few exceptions, any notice of appeal must be

18   filed within ten days of judgment being entered in your case.

19   If you are unable to pay for the cost of appeal you may apply

20   for leave to appeal in forma pauperis.  And if you so request,

21   the Clerk of Court will prepare and file a notice of appeal on

22   your behalf.

23             MR. LEWIS:  Your Honor, I will undertake the filing of

24   the notice of appeal.  I just need to have some idea when and

25   how we'll get the judgment, so we don't lose time.  I know that

54FXROTS                         Sentence

1    the judge has my fax number.  If the Court would just fax the

2    judgment when it's completed to us, we will file a notice in

3    the Southern District in Manhattan.

4              THE COURT:  Great.

5              Thank you.  We will make sure that you get it.

6              MR. LEWIS:  Thank you, your Honor.

7              THE COURT:  Anything else?

8              MR. LEWIS:  No, your Honor.

9              MS. SEIBEL:  No, your Honor.

10             Thank you.

11             THE COURT:  Thank you.

12             Have a good weekend.

13                                    -    -    -

14

15

16

17

18

19

20

21

22

23

24

25